UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARCUS HOWELL,

          Plaintiff,                    Case No. 1:22-cv-243

v.                                     Honorable Ray Kent

UNKNOWN LEAVITT et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.41.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[2] for failure to state a claim against Defendants Vargas, Ward, Crater, Sanchez, Waltz, Lynn, and Silvernail. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourth Amendment claims against the remaining Defendants.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] Plaintiff filed his amended complaint on September 29, 2022. (ECF No. 9.) The Federal Rules of Civil Procedure provide that a party may amend its pleading once as a matter of course within 21 days after service of the complaint. *See* Fed. R. Civ. P. 15(a)(1). Because Defendants have not yet been served, Plaintiff was entitled to amend his complaint as of right. Plaintiff's amended complaint (ECF No. 6) is therefore the operative pleading in this matter.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues prison guards Unknown Leavitt, Unknown Ward, Unknown Ryan, Unknown Palmer, Unknown Crater, Unknown Rosales, Unknown Vargas, and Unknown Sanchez; Nurses Unknown Silvernail, Unknown Lynn, Unknown Fosenburg, and Unknown Waltz; and Physician Assistant Unknown Spurling.

In his amended complaint, Plaintiff alleges that on November 17, 2020, he began to experience symptoms of the coronavirus and on November 26, 2020, Plaintiff tested positive for COVID-19. Plaintiff informed Defendants Vargas and Sanchez that he was not feeling well and asked them to contact health care. Defendant Vargas told Plaintiff to go to his room because staff were not going to cater to his demands. Defendants Vargas, Ward, Leavitt, Crater, and Sanchez repeatedly called Plaintiff a whiner because Plaintiff continued to call his family and lawyers to report his medical condition and to have them contact health care on his behalf.

Plaintiff did not get a medical callout that night but was called to the med window to receive his psychiatric medications. At that time, Plaintiff reported feeling faint, headaches, chest pain, shortness of breath, sweating, and changes in body temperature. Defendant Waltz told Plaintiff to write a kite and drink plenty of water. However, when Plaintiff's subsequently used the med window as an opportunity to report his symptoms, Defendants Vargas and Sanchez wrote misconduct tickets on him for being in the med line too long. As a result, Plaintiff received misconducts and was sentenced to loss of privileges (LOP). Because of Plaintiff's inability to use the phone while on LOP, he had his roommate call family and lawyers on his behalf.

4

Plaintiff claims that he continued to suffer from severe symptoms of COVID-19 and was denied health care requests each day when he went to the med window. On December 25, 2020, Plaintiff was in such bad shape he could barely stand. On December 28, 2020, Plaintiff told Defendant Lynn that he had chest pain, headache, stomachache, and dizziness, but she said she would have to leave a note for Defendant Fosenburg. Later that evening, Plaintiff's respiratory problems became life-threatening, and Defendant Fosenburg was called by Officer Walters. Defendant Fosenburg stated that she had left the building, but that she would come, although Officer Walters told Plaintiff that Defendant Fosenburg just did not want to check on him. Two hours later, Plaintiff's roommate called Officer Walters because Plaintiff was in agony. Officer Walters contacted health care, but no medical staff was on duty. Sergeant Gaerrod was then called and determined that Plaintiff should be sent to the hospital.

While at the hospital, Plaintiff was treated with I.V. fluids and pain medications and was given an EKG and a CAT scan. The doctor formulated a treatment plan with specific medication to be given once Plaintiff was returned to the prison. However, Plaintiff never received the medication as directed by the emergency room doctor and when he asked about it on January 8, 2021, Defendant Spurling told him that he would never receive it. (ECF No. 9, PageID.58.) When Plaintiff complained that he had not had a bowel movement in four days, Defendant Spurling giggled. Plaintiff contends that Defendant Spurling prescribed a medication that increased his pain.

Plaintiff also alleges that on June 7, 2021, while he was on yard, Defendant Leavitt approached him and falsely accused Plaintiff of being on the wrong yard. Defendant Leavitt then falsely accused Plaintiff of throwing a package on the ground and placed him in handcuffs. Plaintiff states that the handcuffs were so tight that he was immediately in pain. Plaintiff told Defendant Leavitt that his hands were numb and asked that the cuffs be loosened. Instead of loosening the

cuffs, Defendant Leavitt unsuccessfully attempted to flip Plaintiff on his face. Defendant Leavitt called for backup and Defendants Palmer, Ryan, Leavitt, and Rosales tackled Plaintiff and ground their knees into Plaintiff's neck, groin, and stomach while Plaintiff continued to cry out that the cuffs were too tight and that his hands and arms were numb. Plaintiff was taken to segregation, where his request for medical treatment was denied. Officer Rideout had to pry the cuffs off. At this point, Plaintiff's wrists were bloody from having the cuffs fastened too tightly.

Plaintiff filed a grievance regarding the incident and appealed the denial through step III. Plaintiff states that video of the incident showed that he was subjected to excessive force and that he was informing Defendant Leavitt that the cuffs were too tight. Plaintiff kited health care on June 9, 2021, June 12, 2021, and June 17, 2021, complaining of numbness and pain in his hands and fingers. Plaintiff was told to discuss his symptoms at his upcoming appointment. Three weeks later, Plaintiff had still not received any medical attention, so Captain Shinaberger contacted health care and ordered Nurse Buskurt to take photos of Plaintiff's hands and wrists, which were still swollen and discolored.

Plaintiff claims that Defendants violated his rights under the Fourth and Eighth Amendments. Plaintiff seeks compensatory and punitive damages, as well as unspecified equitable relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims related to COVID-19

Plaintiff claims that Defendants Vargas, Sanchez, Ward, Leavitt, Crater, Lynn, Fosenberg, Silvernail, and Spurling denied him necessary treatment for his COVID-19 infection. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent

with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)

8

(holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state

> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v.*

*Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.      Defendants Vargas, Ward, Leavitt, Crater, Sanchez, and Waltz

Plaintiff alleges that on the day he tested positive for COVID-19, Defendant Vargas refused to contact health care on Plaintiff's behalf and told Plaintiff to return to his room, stating that he was not going to cater to his demands. Plaintiff fails to allege any facts showing that he was in any immediate danger from the virus at this point. Later that night, Plaintiff reported feeling faint, headaches, chest pain, shortness of breath, sweating, and changes in body temperature when he went to the med window to receive his psychiatric medications. Defendant Waltz told Plaintiff to write a kite and drink plenty of water. Plaintiff complains that when he used the med window as an opportunity to report his symptoms on subsequent occasions, Defendants Vargas and Sanchez wrote misconduct tickets on him for being in the med line too long. Plaintiff's allegations are somewhat vague. However, it appears that Plaintiff was suffering from COVID-19 symptoms during this time that were unpleasant but did not show that he was in any immediate need of medical care to prevent serious harm. Because Plaintiff has not alleged specific facts showing that Defendants Vargas, Ward, Leavitt, Crater, Sanchez, and Waltz were subjectively aware of a risk of serious harm and that they disregarded that risk, his Eighth Amendment claims against them are properly dismissed.

### 2.      Defendants Lynn and Fosenberg

Plaintiff alleges that his symptoms continued to worsen and on December 28, 2020, Plaintiff told Defendant Lynn that he had chest pain, headache, stomachache, and dizziness, but she told Plaintiff that she would have to leave a note for Defendant Fosenburg. Plaintiff's symptoms worsened and later that evening, Plaintiff's respiratory problems became life-threatening. Plaintiff states that Officer Walters, who is not a defendant, called Defendant

Fosenburg, who said she would come but that she had left the building. Officer Walters told Plaintiff that Defendant Fosenburg just did not want to check on him. Two hours later, Plaintiff's roommate called Officer Walters because Plaintiff was in agony. Officer Walters contacted health care, but no medical staff was on duty. Sergeant Gaerrod was then called and determined that Plaintiff should be sent to the hospital.

As noted above, Defendant Lynn responded to Plaintiff's December 28, 2020, request for medical assistance by stating that she would have to leave a note for Defendant Fosenberg, who apparently failed to examine Plaintiff. According to the facts alleged by Plaintiff, his condition on December 28, 2020, was serious enough that Officer Walters, who is not a medical professional, later contacted Defendant Fosenberg directly on Plaintiff's behalf. Defendant Fosenberg told Officer Walters that she had left the building and, although she stated she would come see Plaintiff, she again failed to examine or treat Plaintiff. Plaintiff was hospitalized shortly thereafter.

With regard to Defendant Lynn, Plaintiff fails to allege facts showing that she acted with deliberate indifference. Defendant Lynn did not ignore Plaintiff's complaints but responded to Plaintiff's request for medical treatment by saying that she would leave a note for Defendant Fosenberg. There is no indication that Defendant Lynn thought that Defendant Fosenberg would ignore Plaintiff's complaints, or that Plaintiff was so ill that he required immediate medical attention. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Lynn.

With respect to Defendant Fosenberg, Plaintiff has alleged facts suggesting that she was deliberately indifferent to Plaintiff's serious medical need. As noted above, Defendant Fosenberg failed to respond to Defendant Lynn's note, but more significantly, she failed to examine or treat Plaintiff following Defendant Walter's request for medical assistance. Plaintiff's condition was

12

serious enough that non-medical custody officials determined that it required hospitalization. It is unclear whether Plaintiff suffered any harm because of Defendant Fosenberg's failure to see him on December 28, 2020. However, it is possible that the delay in treatment allowed Plaintiff's symptoms to escalate, and that prompt treatment at the prison would have ameliorated Plaintiff's condition to the extent that would not have required hospitalization. Therefore, Plaintiff's Eighth Amendment claim against Defendant Fosenberg is not properly dismissed on initial screening.

### 3.      Defendant Silvernail

Plaintiff fails to allege any specific facts regarding Defendant Silvernail's involvement with the treatment of his COVID-19 infection. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint or claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

### 4. Defendant Spurling

Plaintiff states that he received a variety of tests and treatment at the hospital, and that the doctor formulated a treatment plan, including medication, to be given once Plaintiff was released from the hospital. However, upon his return to the prison, Plaintiff did not receive the medication and when asked, Defendant Spurling stated that Plaintiff would never receive the medication. When Plaintiff complained that he had not had a bowel movement in four days, Defendant Spurling giggled. Plaintiff claims that instead of helping him, Defendant Spurling prescribed a medication that increased his pain.

Plaintiff appears to be claiming that Defendant Spurling, a physician's assistant, deliberately refused to prescribe the medication prescribed by the physician who treated Plaintiff during his hospitalization. Defendant Spurling instead prescribed a medication which Plaintiff claims increased his pain. Plaintiff also asserts that Defendant Spurling laughed at him when he told her that he had been unable to have a bowel movement for four days. Plaintiff fails to specifically allege what medication was recommended by the doctor at the hospital or what medication was subsequently prescribed by Defendant Spurling. However, in Plaintiff's original complaint (ECF No. 1), he alleges that Defendant Spurling told Plaintiff that he would not be getting anything for his chest or stomach, and to "man-up." (*Id.*, PageID.5.) Defendant Spurling also told Plaintiff to drink water. (*Id.*) Liberally construing Plaintiff's complaint, the Court concludes that he has alleged sufficient facts to state an Eighth Amendment claim against Defendant Spurling at this stage in the proceedings.

### B. Claims related to excessive force

Plaintiff asserts that in June of 2021, Defendants Leavitt, Ryan, Palmer, Rosales, and Silvernail violated his rights under Fourth and Eighth Amendments. Plaintiff alleges that on June 7, 2021, while he was on yard, Defendant Leavitt falsely accused Plaintiff of being on the wrong

yard and of throwing a package on the ground when approached. Defendant Leavitt allegedly placed Plaintiff in handcuffs in a manner that caused immediate pain and numbness. When Plaintiff complained, Defendant Leavitt unsuccessfully attempted to flip Plaintiff on his face. Defendant Leavitt called for backup and Defendants Palmer, Ryan, Leavitt, and Rosales tackled Plaintiff and ground their knees into Plaintiff's neck, groin, and stomach, despite the fact that Plaintiff was not resisting and continued to cry out that the cuffs were too tight and that his hands and arms were numb. Plaintiff was taken to segregation, where his request for medical treatment was denied. Officer Rideout had to pry the cuffs off. At this point, Plaintiff's wrists were bloody from having the cuffs fastened too tightly.

Plaintiff claims that review of the video for the misconduct investigation and hearing show that Defendants used excessive force. Plaintiff subsequently filed a grievance and appealed the denial through step III. Plaintiff also kited health care regarding numbness and pain in his hands and finger on June 9, 2021. On June 12, 2021, Defendant Silvernail responded that an appointment had been scheduled. Plaintiff kited again that same day, and on June 13, 2021, Defendant Silvernail responded that an appointment had already been made for Plaintiff. On June 17, 2021, Plaintiff submitted a third kite, to no avail. An unknown nurse responded and told Plaintiff to discuss his symptoms at his next appointment. However, after three weeks, Plaintiff had still not been seen by health care, so Captain Shinaberger, who is not a defendant, contacted health care and ordered Nurse Buskurt to take photos of Plaintiff's hands and wrists.

### 1. Fourth Amendment

Plaintiff claims that in addition to violating the Eighth Amendment, Defendants' use of force violated the Fourth Amendment.

> "[T]he two primary sources of constitutional protection against physically abusive governmental conduct" are the Fourth and Eighth Amendments. *Id.* The Fourth Amendment's prohibition against unreasonable seizures of the person applies to

> excessive-force claims that "arise[ ] in the context of an arrest or investigatory stop of a free citizen," *id.,* while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences. *See Whitley v. Albers,* 475 U.S. 312, 318–322, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).

*Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). Plaintiff is a convicted prisoner who is currently serving sentences for criminal sexual conduct first-degree, assault with intent to commit murder, armed robbery, first-degree home invasion, carjacking, and three convictions related to the use and possession of weapons. *See* MDOC Offender Tracking Information System https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=872975 (last visited Dec. 16, 2022). Therefore, Plaintiff's Fourth Amendment claims are properly dismissed.

## 2.    Eighth Amendment

Plaintiff's claims regarding the conduct of Defendants Leavitt, Palmer, Ryan, and Rosales on June 7, 2021, must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the

16

need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff asserts that contrary to the misconduct written by Defendant Leavitt, he was on the appropriate yard on June 7, 2021. (ECF No. 9, PageID.59.) He also denies having a package or throwing one on the ground and states that no such package was described in the misconduct or during the hearing. (*Id.*) Plaintiff states that the handcuffs were immediately painful and that he kept asking to have them loosened, but that Defendants Leavitt, Palmer, Ryan, and Rosales refused to loosen them. Plaintiff asserts that he did not resist once on the ground but that Defendants Leavitt, Palmer, Ryan, and Rosales nonetheless ground their knees into Plaintiff's neck, groin, and stomach while Plaintiff continued to cry out that the cuffs were too tight and that his hands and arms were numb.

According to grievance responses attached to Plaintiff's original complaint, he was found guilty of Assault and Battery (Staff Victim), Incite to Riot/Strike, and Threatening Behavior in relation to the incident. (ECF No. 1-3, PageID.21 and PageID.24.) However, Plaintiff does not attach a copy of the misconduct ticket, the hearing investigation, or the hearing report. The Court concludes that at this stage of the proceedings, Plaintiff's allegations are sufficient to support an excessive force claim against Defendants Leavitt, Palmer, Ryan, and Rosales.

Plaintiff's claim against Defendant Silvernail consists of allegations that following the incident with Defendants Leavitt, Palmer, Ryan, and Rosales, she responded to two health care kites by stating that Plaintiff had been scheduled for an appointment. Plaintiff fails to allege any facts showing that Defendant Silvernail was deliberately indifferent to a serious medical need on his part. Therefore, Plaintiff's Eighth Amendment claim against Defendant Silvernail is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Vargas, Ward, Crater, Sanchez, Waltz, Lynn, and Silvernail will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: his Fourth Amendment excessive force claims. Plaintiff's Eighth Amendment claims regarding the denial of treatment for COVID-19 against Defendants Fosenberg and Spurling, and his Eighth Amendment excessive force claims against Defendants Leavitt, Palmer, Ryan, and Rosales remain in the case.

An order consistent with this opinion will be entered.


Dated:   December 30, 2022                       /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge

18