UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS HOWELL,

             Plaintiff,

v.

UNKNOWN LEAVITT, *et al*.,

             Defendants.

_____/

Case No. 1:22-cv-243

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Marcus Howell ("Howell"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). The following defendants remain in this lawsuit: Corrections Officer (CO) [Patrick] Leavitt; CO [Brent] Ryan; CO [Israel] Rosales; PA Kyle Sperling (named as "Unknown Spurling"); and RN Roxanne Fosburg (named as "Unknown Fosenburg"). This matter is now before the Court on defendants Fosburg, Palmer, and Rosales' motion for summary judgment on the basis of exhaustion (ECF No. 27). Howell did not oppose the motion.[1]

**I.       Howell's allegations**

The Court previously summarized Howell's claims for incidents which occurred at the Carson City Correctional Facility (DRF). The Court's opinion referred to defendants by the names as listed in the amended complaint:

> In his amended complaint, Plaintiff alleges that on November 17, 2020, he began to experience symptoms of the coronavirus and on November 26, 2020, Plaintiff tested positive for COVID-19. Plaintiff informed Defendants Vargas and

---

[1] W.D. Mich. LCivR 7.2(c) states that "any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials."

Sanchez that he was not feeling well and asked them to contact health care. Defendant Vargas told Plaintiff to go to his room because staff were not going to cater to his demands.   Defendants Vargas, Ward, Leavitt, Crater, and Sanchez repeatedly called Plaintiff a whiner because Plaintiff continued to call his family and lawyers to report his medical condition and to have them contact health care on his behalf.

Plaintiff did not get a medical callout that night but was called to the med window to receive his psychiatric medications. At that time, Plaintiff reported feeling faint, headaches, chest pain, shortness of breath, sweating, and changes in body temperature. Defendant Waltz told Plaintiff to write a kite and drink plenty of water.   However, when Plaintiff's subsequently used the med window as an opportunity to report his symptoms, Defendants Vargas and Sanchez wrote misconduct tickets on him for being in the med line too long. As a result, Plaintiff received misconducts and was sentenced to loss of privileges (LOP). Because of Plaintiff's inability to use the phone while on LOP, he had his roommate call family and lawyers on his behalf.

Plaintiff claims that he continued to suffer from severe symptoms of COVID-19 and was denied health care requests each day when he went to the med window.  On December 25, 2020, Plaintiff was in such bad shape he could barely stand. On December 28, 2020, Plaintiff told Defendant Lynn that he had chest pain, headache, stomachache, and dizziness, but she said she would have to leave a note for Defendant Fosenburg. Later that evening, Plaintiff's respiratory problems became life-threatening, and Defendant Fosenburg was called by Officer Walters. Defendant Fosenburg stated that she had left the building, but that she would come, although Officer Walters told Plaintiff that Defendant Fosenburg just did not want to check on him.  Two hours later, Plaintiff's roommate called Officer Walters because Plaintiff was in agony.  Officer Walters contacted health care, but no medical staff was on duty. Sergeant Gaerrod was then called and determined that Plaintiff should be sent to the hospital.

While at the hospital, Plaintiff was treated with I.V. fluids and pain medications and was given an EKG and a CAT scan. The doctor formulated a treatment plan with specific medication to be given once Plaintiff was returned to the prison. However, Plaintiff never received the medication as directed by the emergency room doctor and when he asked about it on January 8, 2021, Defendant Spurling told him that he would never receive it. (ECF No. 9, PageID.58.)  When Plaintiff complained that he had not had a bowel movement in four days, Defendant Spurling giggled. Plaintiff contends that Defendant Spurling prescribed a medication that increased his pain.

Plaintiff also alleges that on June 7, 2021, while he was on yard, Defendant Leavitt approached him and falsely accused Plaintiff of being on the wrong yard. Defendant Leavitt then falsely accused Plaintiff of throwing a package on the ground and placed him in handcuffs. Plaintiff states that the handcuffs were so tight

that he was immediately in pain. Plaintiff told Defendant Leavitt that his hands were numb and asked that the cuffs be loosened. Instead of loosening the cuffs, Defendant Leavitt unsuccessfully attempted to flip Plaintiff on his face. Defendant Leavitt called for backup and Defendants Palmer, Ryan, Leavitt, and Rosales tackled Plaintiff and ground their knees into Plaintiff's neck, groin, and stomach while Plaintiff continued to cry out that the cuffs were too tight and that his hands and arms were numb.  Plaintiff was taken to segregation, where his request for medical treatment was denied. Officer Rideout had to pry the cuffs off.  At this point, Plaintiff's wrists were bloody from having the cuffs fastened too tightly. . . .

Plaintiff claims that Defendants violated his rights under the Fourth and Eighth Amendments. Plaintiff seeks compensatory and punitive damages, as well as unspecified equitable relief.

Opinion (ECF No. 10, PageID.69-71).  While the Court screened out many of plaintiff's claims on initial review, it concluded that "Plaintiff's Eighth Amendment claims regarding the denial of treatment for COVID-19 against Defendants Fosenberg and Spurling, and his Eighth Amendment excessive force claims against Defendants Leavitt, Palmer, Ryan, and Rosales remain in the case." *Id*. at PageID.83.

## II.    Legal standard

### A.    Summary judgment

Defendants Fosburg, Palmer, and Rosales have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties'

burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment,

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, Howell did not file a response in opposition to the motion for

summary judgment. "The fact that there has been no response to a summary judgment motion

does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76

F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the

legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in

the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).

However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or

case law supports an argument that the trial court must conduct its own probing investigation of

the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

## B.    Lack of Exhaustion

### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within

five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶

Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be
> limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,
> why, how).  Dates, times, places and names of all those involved in the issue being
> grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate

grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does

not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response,

or does not receive a timely response, he must send a completed Step III grievance, using the

appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### III.    Discussion

Here, defendants reviewed Howell's grievance history and pointed out that he did

not name defendants Fosburg, Palmer or Rosales in any grievance.  *See* Table (ECF No. 28,

PageID.131); MDOC Prisoner Step III Grievance Report and copies of grievances (ECF No. 28-

3).  Defendants identified three grievances related to the alleged incidents.  Grievance DRF-21-

06-1590-17i ("1590")[2] named defendants Leavitt and Ryan as the parties grieved.  *See* ECF No.

28-3, PageID.160.  Grievance DRF-21-03-646-28k ("646") consisted of a single sentence, "I

didn't receive proper treatment or physical review from medical or custody staff," and did not

identify any particular person being grieved. *See* ECF No. 28-3, PageID.165.  Finally, Grievance

DRF-21-01-120-28e ("120") was directed at defendant PA Sperling, *i.e.*,

---

[2] The Court notes that defendants erroneously refer to Grievance 1590 as "DRF-21-06-1059-17i" and as "DRF-1059".
*See* Defendants' Brief (ECF No. 28, PageID.131, 138); Defendants' Exhs. at PageID.155, 157-161); Plaintiff's Exh.
(ECF No. 1-3, PageID.20-24).

On December 28th, 2020, I went to hospital & was prescribed medication for the illness & pain that I am having. Yet, upon returning I have been told that he [PA Sperling] will not order it.

*See* ECF No. 28-3, PageID.169.

Based on this record, Howell did not properly exhaust a grievance to support his claims against defendants Fosburg, Palmer, and Rosales. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### IV. Recommendation

For these reasons, I respectfully recommend that defendants Fosburg, Palmer, and Rosales' motion for summary judgment summary judgment on the basis of exhaustion (ECF No. 27) be **GRANTED**.

Dated: January 5, 2024                                   /s/ Ray Kent
                                                         RAY KENT
                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).